UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

HOWARD GALE,                                      Case No.: 12-cv-3614 (LMS)
                                                  (VLB)(LMS)

                          *Plaintiff*,

        -against-

SMITH & NEPHEW PLC,
SMITH & NEPHEW, INC.,
SMITH & NEPHEW, GmbH,
SPECIALTY ORTHOPEDICS, PLLC and
STEVEN B. ZELICOF, M.D.,

                          *Defendants*.
-------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT SMITH & NEPHEW

## PLC'S MOTION TO DISMISS FOR LACK OF PERSONAM JURISDICTION

Gary Certain, Esq. [GC-7509]
Certain & Zilberg, PLLC
909 Third Avenue, 28th Floor
New York, New York 10022
Tel: (212) 687-7800
gcertain@certainlaw.com

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES…………………………………………………………….iii

INTRODUCTION…………………………………………………………………...1

ARGUMENT

I.      Legal standard on a Rule 12(b)(2) Motion to Dismiss……………………………..2

II.     Smith & Nephew PLC is subject to specific jurisdiction under New York's long-arm statute because Plaintiff's claim arose from PLC's business activities in New York…………………………………………………………………...5

III.    Specific jurisdiction may be imputed onto Smith & Nephew PLC through its subsidiary, Smith & Nephew, Inc……………………………………………………..7

IV.    General jurisdiction may be imputed onto PLC through INC because INC consented to New York jurisdiction by registering with the Secretary of State…………………9

V.     Holding PLC subject to New York jurisdiction comports with due process protections established under the United States Constitution……………………………………10

VI.    Alternatively, the Court should hold PLC's motion in abeyance and permit jurisdictional discovery……………………………………………………………14

CONCLUSION…………………………………………………………………...16

ii

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Advance Realty Associates v. Krupp,* 636 F.Supp. 316 (SDNY 1986).....................................5, 10

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 305 F.3d 120, 129 (2d Cir. 2002)....13

*Ball v. Metallurgie Hoboken-Overpelt, S.A.,* 902 F.2d 194 (2d Cir. 1990)................................2, 5

*BHP Trading (UK) Ltd. v. Deep Sea Intern. Shipping Co.,* 1991 WL 198747 (SDNY 1991).....14

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985).........................................................10, 11

*Calder v. Jones,* 465 U.S. 783, 788 (1984)............................................................................3, 10

*Chloe v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158 (2d Cir. 2010)..............................11, 12

*Int'l Shoe Co. v. Washington,* 326 US 310 (1945).........................................................................3

*In re Magnetic Audiotape Antitrust Litigation,* 334 F.3d 204 (2d Cir. 2003)..............................14

*Keeton v. Hustler Magazine, Inc.,* 465 US 770 (1984).........................................................10, 11

*Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236 (2d Cir. 1999) ...............................................2, 3, 10

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 732 F.3d 161 (2d Cir. 2013) ..............2, 3, 7

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560 (2d Cir. 1996).......................13

*Motown Record Co., LP v. iMesh.com, Inc.,* 2004 WL 503720 (SDNY 2004) ............................8

*Muollo v. Crestwood Village, Inc.,* 155 AD2d 420 (2d Dept. 1989)........................................5, 10

*Pension Committee of University of Montreal Pension Plan v. Banc of America Securities, LLC,*
2006 WL 708470 (SDNY 2006) ............................................................................................15

*Public Administrator v. Royal Bank of Canada,* 19 NY2d 127 (NY 1967) ........................3, 7, 16

*Salemi v. Boccador, Inc.,* 2004 WL 943869 (SDNY 2004) ..................................3, 4, 7, 8, 15, 16

*Speed v. Pelican Resort N.V.,* 1992 WL 147646 (SDNY 1992)...............................................5, 10

*Stutts v. De Dietrich Group,* 465 F.Supp.2d 156 (EDNY 2006) ....................................................8

*Taca Int'l Airlines, S.A. v. Rolls-Royce of England, Ltd.,* 15 NY2d 97 (NY 1965) .............4, 7, 16

*Texas Intern. Magnetics, Inc. v. BASF Aktiengesellschaft,* 31 Fed.Appx. 738 (2d Cir. 2002)..... 15

*Ugalde v. Dyncorp, Inc.,* 2000 WL 217502, 3 (SDNY 2000) ........................................................ 4

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corporation,* 751 F.2d 117 (2d Cir. 1984)…..................................................................................................................... 2, 4, 5

*Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88 (2d Cir. 2000) ....................................... 3, 7, 16

**STATUTES**

CPLR § 301............................................................................................................................... 2

CPLR § 302............................................................................................................................... 2

Plaintiff Howard Gale submits this memorandum in opposition to Defendant Smith & Nephew plc's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

## INTRODUCTION

Plaintiff Howard Gale (hereinafter "Gale") commenced this action sounding in product liability, breach of warranty, negligence and unfair and deceptive trade practices pursuant to NY GBL 349 against Defendant Smith & Nephew, Inc. (hereinafter "INC"), and medical malpractice and product liability against defendants Sound Shore Medical Center of Westchester, Specialty Orthopaedics, PLLC, Steven B. Zelicof, M.D., in addition to the following parties that were dismissed by stipulation of the parties, Vaishafee R. Shukla, M.D., Ognian I. Bouhlev, M.D., Michael S. Ackerman, M.D., YigalSamocha, M.D., Ira Novich, M.D., Courtney Kuhn, P.A., Craig S. Steinberg, P.A., Michael J. Cicatelli, P.A., Jhoamee Delacruz, R.N., sued herein as "J. Delacruz, RN", Kellie Miller, R.N., sued herein as "K. Miller, RN", Desmond Brown, R.N., sued herein as "D. Brown, RN", and Venetta Doles, RN.

On November 25, 2013, Plaintiff Gale filed with the Court's leave a Second Amended Complaint naming Smith & Nephew, plc (hereinafter "PLC") and Smith & Nephew, GmbH (hereinafter "GmbH"). PLC, GmbH and INC are all part of the Smith & Nephew group of companies; PLC is headquartered in England and is the parent-corporation of the group. As the parent-corporation, PLC wholly owns and has oversight authority over INC. At the very least, this authority extends to approving capital expenditures and high-level, strategic business decisions. (*See* Declaration of Susan Swabey, ¶ 5 and 7) In the instant motion, PLC moves for dismissal pursuant to Rule 12(b) for want of personal jurisdiction. For the reasons cited below,

PLC's motion is at best premature, and Plaintiff urges the Court to deny the instant motion in its entirety.

## ARGUMENT

### I.        Legal Standard on a Rule 12(b)(2) Motion to Dismiss.

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *See Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236 (2d Cir. 1999) *quoting Metropolitan Life. Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996).  "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith legally sufficient allegations of jurisdiction.  At that preliminary stage, the plaintiff's prima facie showing may be established solely by allegations [in the complaint]." *See Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194 (2d Cir. 1990); *see also Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corporation*, 751 F.2d 117, 120 (2d Cir. 1984) ("[W]hen the issue is decided initially on the pleadings and without discovery, the plaintiff need show only a *prima facie* case.")  Further, when "evaluating whether the requisite showing has been made, [the Court] construes the pleadings and any supporting materials in the light most favorable to the plaintiff." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013).

Personal jurisdiction in a diversity action is determined by the law of the state in which the district court sits. *See Arrowsmith v. U.P.I.*, 320 F.2d 219 (2d Cir. 1963).  In New York, the courts employ two variant bases for personal jurisdiction: general jurisdiction under CPLR § 301 and specific jurisdiction under CPLR § 302.  Under CPLR § 301, the Court may exercise jurisdiction over foreign corporations that maintain a continuous presence in New York and who engage in substantial activities so as to constitute "doing business" in New York, *Wiwa v. Royal*

*Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir. 2000).   Alternatively, specific jurisdiction under CPLR 302 enables courts to obtain jurisdiction over a foreign corporation for causes of action arising from business transactions within the state.   *See Licci,* 169. ("To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity.") (citation omitted)

Both general and specific jurisdiction requires an additional determination as to whether "the district court's exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution." *Id, citing Int'l Shoe Co. v. Washington,* 326 US 310 (1945).   The due process protection afforded by the Constitution permits a state to exercise jurisdiction over a non-resident defendant with whom it has "certain minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 242 (2d Cir. 1999), *quoting Calder v. Jones,* 465 U.S. 783, 788 (1984).   "To establish the minimum contacts necessary to justify specific jurisdiction, the plaintiff first must show that his claim arises out of or relates to defendant's contacts with the forum state."   *Id.* at 242.   The plaintiff must demonstrate that the defendant "purposefully availed [itself] of the privilege of doing business in the forum state and that the defendant could foresee being haled into court there."   *Id.* at 243. (internal quotations omitted) (internal citations omitted)

In New York, both general and specific personal jurisdiction may be imputed on a foreign corporation through its subsidiary "where the subsidiary is so dominated by the parent as to be, in practice, a 'mere department' of the parent rather than a truly independent entity." *See Salemi v. Boccador, Inc.*, 2004 WL 943869, 3 (SDNY 2004), *citing Public Administrator v.*

*Royal Bank of Canada*, 19 NY2d 127 (NY 1967); *see also Ugalde v. Dyncorp, Inc.*, 2000 WL 217502, 3 (SDNY 2000) ("A related corporation, such as a parent or subsidiary corporation, may be subject to general jurisdiction under N.Y. CPLR § 301 if the activities of the corporation in the state may be attributed to the related corporation."); *Taca Int'l Airlines, S.A. v. Rolls-Royce of England, Ltd.*, 15 NY2d 97 (NY 1965); *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir. 2000); *Volkswagenwerk, supra*.   The Second Circuit examined four factors in deciding whether the relationship between a subsidiary and its parent corporation is sufficient to establish personal jurisdiction under New York law: "(1) whether the two entities share common ownership; (2) the extent of the subsidiary's financial dependence on the parent; (3) the degree of parental interference in the selection and assignment of the subsidiary's executive personnel and the failure to observe corporate formalities; and (4) the degree of control exercised by the parent over the subsidiary's marketing and operational policies." *Salemi*, 3.   Of the four enumerated factors, only the requirement of common ownership is essential for a determination of personal jurisdiction based on the parent-subsidiary relationship.  *See Volkswagenwerk*, 120 ("New York courts regard one factor as essential to the assertion of jurisdiction over a foreign related corporation…the essential factor is common ownership.")

In the case at bar, this Court may exercise both general jurisdiction and specific jurisdiction over PLC.   PLC is subject to specific jurisdiction because Plaintiff's claims originated from PLC's business conduct in New York; specifically, the aggressive marketing, recruiting and training of New York physicians in an effort to promote the subject Smith & Nephew hip replacement components.   Specific jurisdiction may also be imputed onto PLC through its wholly owned subsidiary, INC, because Plaintiff's claims arose from INC's business

transactions within New York; specifically, the sale of the subject Smith & Nephew hip replacement components.

Additionally, general jurisdiction may be imputed onto PLC through INC because INC consented to personal jurisdiction by registering with the New York Secretary of State to conduct business within New York State. *See Advance Realty Associates v. Krupp*, 636 F.Supp. 316 (SDNY 1986) ("A foreign corporation is deemed to have consented to general jurisdiction over it when it registers to do business in New York pursuant to N.Y. Business Corp. Law § 304, without regard to the actual volume of business done there."); *see also Speed v. Pelican Resort N.V.*, 1992 WL 147646, at 1 (SDNY 1992) ("Both this Court and the New York State courts have consistently held that a foreign corporation which registers under BCL § 1304 and establishes the Secretary of State as its agent upon whom process may be served under BCL § 304, has consented to personal jurisdiction in the State of New York."); *Muollo v. Crestwood Village, Inc.*, 155 AD2d 420, 421 (2d Dept. 1989) ("[A] foreign corporation is deemed to have consented to personal jurisdiction over it when it registers to do business in New York and appoints the Secretary of State to receive process.")

## II. Smith & Nephew PLC is subject to specific jurisdiction under New York's long-arm statute because Plaintiff's claims arose from PLC's business activities in New York.

In the current motion, PLC moves for dismissal prior to any jurisdictional discovery. Since jurisdictional or any discovery concerning PLC has not commenced, Plaintiff's burden to defeat the present motion can be met by merely pleading sufficient allegations of jurisdiction. *See Ball; Volkswagenwerk, supra.*

5

A review of the Second Amended complaint clearly demonstrates that plaintiff's allegations have sufficiently met the threshold pleading requirements to subject PLC to New York jurisdiction. As alleged in the Second Amended Complaint, PLC, along with INC and GmbH, designed, developed and manufactured the very item that is the subject of this action – the Smith & Nephew hip replacement components utilized in Mr. Gale's subject procedure. PLC, along with INC and GmbH, marketed the subject Smith & Nephew hip replacement components and placed it in the stream of commerce in New York, and knew or should have reasonably known that the subject Smith & Nephew hip replacement components would be purchased and used by consumers in the State of New York. There is also at least one instance where the Smith & Nephew defendants organized extensive recruitment and training programs whereby training materials were provided to physicians and flights were purchased for physicians from New York to come to England for the purposes of training and familiarization with the subject Smith & Nephew hip replacement components. (See Specialty Orthopaedics PLLC Response to Plaintiff's Interrogatories, Response #13, Plaintiff's Exhibit 1). As disclosed by co-defendant Steven Zelicoff, Dr. Zelicoff was paid $20,000 by the Smith & Nephew defendants and flown to Birmingham, England to observe another physician perform multiple Birmingham hip resurfacing procedures, upon information and belief under the direction and control of PLC. (See Specialty Orthopaedics PLLC Response to Plaintiff's D&I Demands, Response #6, Plaintiff's Exhibit 2)

Although the exact extent and degree of participation of each Smith & Nephew entity in the design, development, promotion, marketing and distribution of the subject Smith & Nephew hip replacement components is unknown to Plaintiff at this time, Plaintiff respectfully contends that the pleadings contained in the complaint are sufficient to establish a prima facie showing

6

that jurisdiction exists. *Licci, supra.* Without any jurisdictional discovery, the Court must "construe the pleadings and any supporting materials in the light most favorable to the plaintiff." *Licci*, 167. Plaintiff respectfully urges that the allegations contained in the Second Amended Complaint, along with the disclosures by co-defendants Specialty Orthopaedic and Dr. Zelicoff, clearly demonstrate that PLC actively transacted business within the state of New York markets and availed itself to New York's markets by recruiting New York physicians and promoting, advertising and placing into the stream of commerce an item that PLC knew or should have known would be purchased by New York consumers.

Further, it is highly unlikely that the Smith & Nephew defendants would only recruit Dr. Zelicoff; rather, a far more likely scenario is that Dr. Zelicoff was merely one of numerous New York physicians granted perks and other benefits by the Smith & Nephew defendants in an effort to promote the subject Smith & Nephew hip replacement components. The fact that New York physicians were actively recruited and even flown to England to familiarize themselves with the subject Smith & Nephew hip replacement components further indicates that the Smith & Nephew defendants, including PLC, purposefully targeted and attempted to avail themselves of the New York market. Under these facts, it is entirely proper for the Court to subject PLC to New York jurisdiction, and as such, PLC's motion should be denied in its entirety.

### III.    Specific jurisdiction may be imputed onto Smith & Nephew plc through its subsidiary, Smith & Nephew, Inc.

PLC is further subject to specific jurisdiction in New York based upon the conduct and activities of its wholly-owned subsidiary, INC. As discussed in section I, jurisdiction on a foreign, parent-corporation may be imputed in instances where the subsidiary is in practice an agent or department of the parent. *See Salemi, Royal Bank, Rolls-Royce, Wiwa, supra.* When

determining whether jurisdiction grounded on a parent-subsidiary relationship is appropriate, the Court analyzes four factors: "(1) whether the two entities share common ownership; (2) the extent of the subsidiary's financial dependence on the parent; (3) the degree of parental interference in the selection and assignment of the subsidiary's executive personnel and the failure to observe corporate formalities; and (4) the degree of control exercised by the parent over the subsidiary's marketing and operational policies." *Salemi*, 3.

In the current instance, the first factor is not in dispute; Susan Swabey, an officer of PLC, admits in her declaration that PLC "wholly owns INC." (See Declaration of Susan Swabey, ¶ 5); *see also Motown Record Co., LP v. iMesh.com, Inc.*, 2004 WL 503720 (The common ownership element was undisputed because corporation was a wholly owned subsidiary of parent-corporation.); *Stutts v. De Dietrich Group*, 465 F.Supp.2d 156 (EDNY 2006) (Court held that being a wholly owned subsidiary was sufficient to demonstrate common ownership.) Ms. Swabey also avers that PLC maintains "oversight authority" over INC and has the ability to "approve significant capital expenditures and high-level strategic business decisions."

While Ms. Swabey's declaration fails to specify the nature and scope of such oversight authority, the limited and artfully tailored declarations submitted by PLC clearly indicate that PLC has some form of oversight and ability to control its subsidiaries, including INC. The declarations are cleverly worded such that the exact details of the acknowledged oversight are left ambiguous. For example, Ms. Swabey, upon admitting that PLC has oversight over INC, immediately transitions to general denials that said oversight does not include any control over the day-to-day operations of INC. (See Declaration of Susan Swabey, ¶ 7) The declaration by John Clausen, Vice-President of Reconstruction Hips at Smith & Nephew, also seems to obfuscate the issue; specifically, PLC's control over INC. The majority of Mr. Clausen's

8

declaration is comprised of statements concerning the activities of INC; indeed, there is only one sentence in Mr. Clausen's entire declaration that actually concerns PLC. Said sentence, while indicating that "Smith & Nephew plc has no involvement in the design, manufacture, packaging, labeling, sale, or distribution of the BHR System in the United States and had no involvement in the decision to implement a market withdrawal of approximately 185 acetabular cups," is conclusory, generic and limited. [1] (See Declaration of John Clausen, ¶ 11)

Respectfully, both the declarations by Ms. Swabey and Mr. Clausen are grossly deficient in that they are replete with generic, vague and self-serving statements. While PLC may attempt to claim that it maintains a distant relationship to INC, the disclosures by Dr. Zelicoff of being paid $20,000 and being flown to England to observe the implantation of Smith & Nephew hardware strongly supports a conclusion that PLC was involved with INC's efforts to promote the subject Smith & Nephew hip replacement components in New York and in the United States in general. Therefore, this Court may properly exercise specific jurisdiction over PLC and it is respectfully requested that the Court deny PLC's motion in its entirety.

## IV. General jurisdiction may be imputed onto PLC through INC because INC consented to New York jurisdiction by registering with the Secretary of State.

Additionally, PLC's motion should be denied because PLC is subject to New York general jurisdiction based upon its wholly owned subsidiary, INC. INC is a foreign corporation incorporated in Delaware that registered with the New York Secretary of State in 1997. [2] New York Courts have consistently held that a foreign corporation that registered with the Secretary

---

[1] It should be noted that the Smith & Nephew components that are the subject of this action include but are not limited to the BHR System components.

[2] *See* Smith & Nephew, Inc. Entity of Information, last updated May 28, 2014 (http://appext20.dos.ny.gov/corp_public/CORPSEARCH.ENTITY_INFORMATION?p_nameid=2184162&p_corpi d=2130662&p_entity_name=Smith%20%26%20Nephew&p_name_type=%25&p_search_type=CONTAINS&p_src h_results_page=0) (last visited May 28, 2014)

of State and appoints the Secretary of State for process consents to New York jurisdiction.  *See Krupp; Speed; Mullo, supra*.

Since INC consented to New York general jurisdiction, and since INC is a wholly owned subsidiary of PLC, general jurisdiction may be imputed onto PLC for the reasons enumerated in Section III, *supra*.  Additionally, PLC's motion is improper at this stage of the litigation because discovery is required to determine the extent of PLC's control and oversight over INC.  Therefore, it is respectfully requested that PLC's motion should be denied in its entirety.

### V.      Holding PLC subject to New York jurisdiction comports with due process protections established under the United States Constitution.

PLC's motion should also be denied because this Court's exercise of personal jurisdiction over PLC is consistent with the due process protections provided by the United States Constitution.  The due process protection afforded by the Constitution permits a state to exercise jurisdiction over a non-resident defendant with whom it has "certain minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and justice." *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 242 (2d Cir. 1999), *quoting Calder v. Jones,* 465 U.S. 783, 788 (1984).  "To establish the minimum contacts necessary to justify specific jurisdiction, the plaintiff first must show that his claim arises out of or relates to defendant's contacts with the forum state." *Id.* at 242.  The plaintiff must demonstrate that the defendant "purposefully availed [itself] of the privilege of doing business in the forum state and that the defendant could foresee being haled into court there." *Id.* at 243. (internal quotations omitted) (internal citations omitted)

The "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985), *citing Keeton v. Hustler Magazine, Inc.*, 465 US 770

(1984).  On the other hand, "jurisdiction is proper…where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum State."  *Id.* "[W]here the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well."  *Id.* (internal quotations omitted) (internal citations omitted)

In the current action, PLC, along with the rest of the Smith & Nephew defendants, intentionally and purposefully availed itself of the privilege of doing business in New York by their aggressive recruitment and marketing of their product to Dr. Zelicoff and (most likely) other New York physicians.  By targeting Dr. Zelicoff (and other New York physicians), PLC purposefully sought to promote the subject Smith & Nephew hip replacement components to New York patients.  PLC further availed itself of the privilege of doing business in New York through its wholly owned subsidiary, INC, which sold and distributed the subject Smith & Nephew hip replacement components to consumers in New York. *See Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010)  To give the Court a general idea of the economic benefit sustained by PLC, PLC reported revenues of over $1.8 billion in the United States in 2013.[3]  Undoubtedly portions of this significant revenue were derived from sales in New York State.

Further, the District Court's exercise of jurisdiction is entirely reasonable when weighed against the interests of the State of New York and the Plaintiff.  When determining the reasonableness of placing a foreign defendant under New York jurisdiction, the Courts look at

---

[3] See Smith & Nephew PLC Annual Report 2013, p102, Plaintiff's Exhibit 3.

five factors: "[1] the burden on the defendant, [2] the interests of the forum State, and [3] the plaintiff's interest in obtaining relief.  It must also weigh in its determination [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and [5] the shared interest of the several States in furthering fundamental substantive social policies." *Chloe*, 173.  As PLC is a British corporation, the last two factors do not apply to the instant motion.

PLC claims that it would be unduly burdened if the Court exercised jurisdiction over it; PLC claims that it is burdened by "the travel burdens upon every non-resident defendant" as well as the "heavy burden of defending itself in a foreign legal system."  (Defendant's Memorandum, p15).  Respectfully, PLC's "reasons" are simply red herrings; PLC is a multi-billion dollar corporation with numerous subsidiaries around the world.  As disclosed by Dr. Zelicoff, PLC and its subsidiaries were able to afford free flights for physicians to travel to England to observe demonstrations concerning the subject Smith & Nephew hip replacement components. Furthermore, as a parent corporation with subsidiaries around the world, it is likely that officials from PLC routinely travel to all parts of the world.  Considering that the case is venued in Southern District of New York, it is highly doubtful that travel to New York would be so unique and rare a situation as to constitute a gross inconvenience to PLC.

PLC's assertion that it would be greatly burdened by litigating the suit in a foreign legal system is similarly dubious.  There is nothing to indicate, nor has PLC alleged, that hiring American counsel would be any greater a burden on PLC than had this action been commenced in England and PLC had retained British counsel.  Nor would the actual work involved in litigating this suit fall on PLC; instead, the actual task of litigating would be accomplished by PLC's counsel.  While PLC may attempt to claim that it would be required to assist its counsel in a variety of issues that may arise during the normal pendency of a lawsuit, such assistance is

required in all lawsuits, regardless of the venue.  Such an excuse holds no bearing to PLC's claim that New York, in particular, is unduly burdensome.  Indeed, the advances in modern communication and technology have greatly relieved the traditional burdens of litigation.  *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002) ("Even if forcing the defendant to litigate in a forum relatively distant from its home base were found to be a burden, the argument would provide defendant only weak support, if any, because the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago.") (internal quotations omitted); *see also Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996)

In contrast, the interests of both New York State and Plaintiff would be greatly prejudiced if PLC was dismissed from the current action.  PLC, as the parent corporation of INC, as well as all other Smith & Nephew subsidiaries, would undoubtedly have access to records of instances whereby the subject Smith & Nephew hip replacement components malfunctioned, unexpectedly failed and/or caused severe metal alloy blood poisoning.  Indeed, as the parent corporation, PLC would have access to records and other documents outside of INC's possession.  Considering that one of Plaintiff's claims against the Smith & Nephew defendants includes a failure to monitor and warn consumers of the dangers associated with the use of the subject Smith & Nephew hip replacement components, including metal alloy (cobalt-chromium) blood poisoning, such records and documents are especially pertinent to proving Plaintiff's claim.

Furthermore, all the facts and events which give rise to the current action originate in New York.  The surgery whereby the subject Smith & Nephew hip replacement components was implanted occurred in Westchester, New York.  Co-defendants Specialty Orthopaedic and

Steven Zelicoff provided medical treatment to Plaintiff in New York.  Many of the former medical defendants whom this case was discontinued against and who may be deposed as non-parties are residents of New York and/or the surrounding area.  As the locus of occurrence of the subject incident, New York State has a "manifest interest in providing…a convenient forum for redressing injuries inflicted by out-of-state actors."  *Burger King,* 473.

All of the relevant factors that the Court is required to consider when determining the reasonableness of exercising jurisdiction over a foreign defendant fall in favor of keeping PLC in the current action.  For the aforementioned reasons, the Court should deny PLC's motion in its entirety and hold PLC subject to New York's jurisdiction.

## VI.   Alternatively, the Court should hold PLC's motion in abeyance and permit jurisdictional discovery.

Although it is Plaintiff's contention that jurisdiction may be imputed onto PLC through its subsidiary, INC., PLC's motion is further premature at this stage in the litigation process due to the lack of discovery pertaining to PLC.  New York courts have commonly refused to decide a motion to dismiss for want of personal jurisdiction where the relationship between the parent corporation and the subsidiary has been unclear.  *See In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204, 208 (2d Cir. 2003) ("[I]t was premature to grant dismissal prior to allowing discovery on plaintiffs' insufficiently developed allegations regarding the relationship between SKM and its subsidiary.");  *BHP Trading (UK) Ltd. v. Deep Sea Intern. Shipping Co.*, 1991 WL 198747 (SDNY 1991) ("[D]efendant's contention is premature, as the question of whether or not defendant is subject to "doing business" jurisdiction must await the jurisdictional discovery here authorized.");  *Bank of Montreal v. Mitsui Mfrs. Bank*, 1987 WL 5829 (SDNY 1987) ("[I]t is premature for the Court to grant the defendant's motion until there is discovery

concerning the corporate interrelationship between MMB and Mitsui Bank Ltd. of New York.");
*Texas Intern. Magnetics, Inc. v. BASF Aktiengesellschaft*, 31 Fed.Appx. 738 (2d Cir. 2002)
("Although plaintiffs did not show that BASF is subject to the court's jurisdiction, we believe
they were entitled to jurisdictional discovery in order to develop the factual record requisite for
such a showing."); *Pension Committee of University of Montreal Pension Plan v. Banc of
America Securities, LLC*, 2006 WL 708470 (SDNY 2006) (Court denied defendant's motion to
dismiss with leave to renew after the completion of limited discovery on the issue of personal
jurisdiction.)

In the current action, the lack of any discovery greatly impedes the Court's ability to
analyze numerous factors relevant to the issue of personal jurisdiction.  As explained in section
III, *supra*, the Court looks at four factors in determining whether personal jurisdiction may be
imputed onto a parent-corporation through its subsidiary: (1) whether the two entities share
common ownership; (2) the extent of the subsidiary's financial dependence on the parent; (3) the
degree of parental interference in the selection and assignment of the subsidiary's executive
personnel and the failure to observe corporate formalities; and (4) the degree of control exercised
by the parent over the subsidiary's marketing and operational policies.  *Salemi*, *supra*.

While PLC has readily admitted that it wholly owns INC, thus satisfying the first factor,
the remaining factors cannot be conclusively determined at this time.  Nor is it proper to simply
rely on the declarations submitted by PLC which contain vague, generic and self-serving
statements.  Indeed, the lack of discovery only highlights the deficiencies in the declarations
submitted in PLC; the fact that PLC would readily admit to having "some oversight authority
over INC.," without more, certainly underscores the necessity for further jurisdictional
discovery.  Considering that PLC is requesting the extreme relief of dismissal, it would be

15

grossly premature for the Court to dismiss Plaintiff's claims without permitting Plaintiff an opportunity to determine the extent and specific nature of PLC's relationship with its subsidiary, INC. Therefore, it is respectfully requested that should the Court feel that Plaintiff has not yet sufficiently established personal jurisdiction, deny PLC's motion in its entirety and permit limited discovery. *See Salemi, Royal Bank, Rolls-Royce, Wiwa, supra*.

## CONCLUSION

Defendant PLC prematurely moves for dismissal of the current action. Defendant PLC has failed to establish with legal certainty that personal jurisdiction may not be imputed based upon PLC's relationship with its subsidiary, INC. PLC's own declarations, when viewed in the light most favorable to Plaintiff, indicate that PLC maintained some form of control and oversight over INC. Further, disclosures by co-defendant Specialty Orthopaedic, PLLC and Steven Zelicoff, M.D. indicate that PLC, directly and/or indirectly through INC, actively pursued and recruited New York physicians to promote the subject Smith & Nephew hip replacement components by paying them substantial sums of money and flying physicians to England to allow them to observe firsthand the implantation of Smith & Nephew devices. Such conduct is proof that PLC attempted to avail itself to New York markets, and thus strongly support a finding of personal jurisdiction over PLC.

Alternatively, based upon the foregoing, PLC's motion for dismissal is premature in light of the lack of any jurisdictional discovery in this case, and demands relief that would unduly prejudice the Plaintiff at this early stage of the litigation process. For the aforementioned reasons, the Court should deny PLC's motion in its entirety or alternatively, hold the motion in abeyance until further discovery can be accomplished.

Dated:  New York, New York
      May 30, 2014

                             Respectfully submitted,

                             Gary Certain, Esq.
                             Certain & Zilberg, PLLC
                             *Attorney for Plaintiff*
                             909 Third Avenue, 28th Floor
                             New York, NY 10022
                             Tel: (212) 687-7800