UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

| | | |
|---|---|---|
| HOWARD GALE, | : | Civil Action No: |
|               *Plaintiff,* | : | 12-CV-3614 (VLB)(LMS) |
| -against- | : | |
| SMITH & NEPHEW, PLC, | : | Hon. Vincent L. Briccetti |
| SMITH & NEPHEW, INC., | : | |
| SMITH & NEPHEW, GmbH, | : | |
| SPECIALITY ORTHOPAEDICS, PLLC and | : | |
| STEVEN B. ZELICOF, M.D. | : | |
|               *Defendants.* | : | |

----------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY THE MOUNT SINAI HOSPITAL'S OPPOSITION TO PLAINTIFF'S MOTION TO HOLD IT IN CONTEMPT**

Bettina B. Plevan
Rebecca L. Berkebile
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036
212-969-3000
bplevan@proskauer.com

The Mount Sinai Hospital ("Mount Sinai" or the "Hospital") should not be held in contempt because it is unable to produce the medical hardware that was removed from Plaintiff's body during surgery at Mount Sinai. Mount Sinai – which is not a party to this litigation – previously advised Plaintiff in a sworn affidavit that it conducted an exhaustive search and has been unable to locate the hardware Plaintiff seeks in his subpoenas. Thus, Mount Sinai cannot produce the hardware. Mount Sinai was under no legal obligation to maintain the hardware for any specific period of time and likely inadvertently discarded it before Plaintiff served his Notice to Preserve Evidence and subpoenas. Accordingly, Mount Sinai should not be held in contempt.

## I.   FACTUAL BACKGROUND

Mount Sinai is part of The Mount Sinai Health System, which includes the Icahn School of Medicine at Mount Sinai and seven hospital campuses in the New York area. The Health System encompasses approximately 6,200 physicians, including general practitioners and specialists, and 12 freestanding ambulatory surgery centers. Mount Sinai is a 1,171 bed teaching facility located on the border between East Harlem and the Upper East Side.

Plaintiff underwent surgery at Mount Sinai on May 22, 2012. (Serby Declaration in Support of Motion for Contempt ("Serby Decl.") Exhibit 8 ¶ 5.) During the surgery, medical hardware and tissue were removed from Plaintiff's body. (*Id.*) A lab technician, John Macias, was responsible for retrieving the hardware and the tissue from the operating room on May 22, 2012, assigning the specimen a unique identification number, and disposing of the specimen at the appropriate time. (*Id.*) The specimen was not logged in the hardware log book. (*Id.* at ¶ 6.) The Hospital does not keep a log of tissue specimens and discards tissue specimens approximately four weeks after a surgery. (*Id.* at ¶ 4.) It appears that Mr. Macias, who is no

1

longer employed by Mount Sinai, likely inadvertently categorized the hardware and tissue removed from Plaintiff as solely a tissue specimen, and disposed of it within four weeks of the surgery, on or about June 18, 2012.  (*Id.* at ¶ 7.)  Mount Sinai is under no regulatory requirement to maintain hardware like the specimen removed from Plaintiff for any specific period of time.  *See* 10 NYCRR Part 58-1.  If the specimen was inadvertently categorized as tissue rather than hardware, the specimen would not have been recorded in the hardware log book or tracked after it was sent to pathology.  (Declaration of Eileen Hauptman in Opposition to Motion for Contempt ("Hauptman Decl.") at ¶ 3.)

Mount Sinai did not receive Plaintiff's Notice to Preserve Evidence until on or about June 27, 2012.  (Serby Decl. Exhibit 1.)  By then, the specimen at issue had probably already been discarded, having been inadvertently categorized as tissue.  (Hauptman Decl. ¶ 3.)  Nonetheless, in response to Plaintiff's requests, Mount Sinai performed exhaustive searches in an attempt to locate the hardware.[1]  (Serby Decl. Exhibit 8 ¶ 6.)

Upon receiving Plaintiff's subpoenas, Mount Sinai continued conducting an exhaustive search for the hardware.  (Serby Decl. Exhibit 8 ¶ 6.)  Eileen Hauptman, the Administrative Lab Manager in the Pathology Department at Mount Sinai, ordered a thorough search of all boxes storing hardware in the date ranges including and surrounding May 22, 2012 in an effort to locate the hardware.  (*Id.*)  Numerous individuals, including a lab technician and the supervisor

---

[1]  Plaintiff's claim that "Plaintiff's counsel was informed by the Pathology Department that the subject hip device had been transferred to a third world country" is completely baseless and inadmissible.  *See Fed. R. Evid. 801*.  Plaintiff fails to allege who at Mount Sinai made such a statement or provide any details concerning precisely when or where such a statement was made.  Plaintiff's bald assertion is also wrong, as Mount Sinai does not send any hardware or tissue removed from patients to other countries.  (Hauptman Decl. ¶ 4.)

of the morgue, performed these searches. (*Id.*) Unfortunately, the hardware was never located. (*Id.*)

As Plaintiff acknowledges, Plaintiff's counsel had numerous conversations with Cheryl Wendt, Esq., Director of Claims & Litigation, for FOJP Service Corporation, Mount Sinai's general liability insurer that coordinates a significant portion of the Hospital's legal defense work, regarding the results of Mount Sinai's search for the hardware. (Memorandum of Law in Support of Plaintiff's Motion by Order to Show Cause to Hold Mt. Sinai Medical Center in Contempt ("Pl. Brief") at 3.) Ms. Wendt, speaking on behalf of Mount Sinai, informed Plaintiff's counsel that the Hospital had performed thorough searches for the hardware, Mount Sinai could not locate the hardware, and the hardware had likely been discarded. (*Id.*) In response, Plaintiff's counsel requested an affidavit to this effect. (*Id.* at 4.)

When Plaintiff's counsel requested from Mount Sinai an affidavit regarding what happened to the specimen in question, the Hospital complied with this request and submitted an affidavit from Ms. Hauptman, dated April 15, 2014. (Berkebile Declaration in Opposition to Motion for Contempt ("Berkebile Decl.") Exhibit A.) Counsel for Mount Sinai sent this affidavit to Plaintiff's counsel on April 17, 2014, asking that Plaintiff's counsel raise any questions regarding this affidavit with Mount Sinai's counsel. (*Id.*) Plaintiff's counsel never responded to this correspondence with any follow up questions or asked for any additional details concerning the whereabouts of the hardware. (Berkebile Decl. ¶ 3.)

## II. <u>MOUNT SINAI SHOULD NOT BE HELD IN CIVIL CONTEMPT</u>

### A. *Legal Standard for Civil Contempt*

It is well-settled that a court can exercise its power to hold a party in civil contempt only when "(1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply." *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989), *cert. denied*, 495 U.S. 947 (1990). *See Latino Officers Ass'n City of N.Y., Inc., v. City of New York*, 558 F.3d 159, 164 (2d Cir. 2009) (same).

The "standard for contempt is rigorous." *Schmitz v. St. Regis Paper Co.*, 758 F. Supp. 922, 925 (S.D.N.Y. 1991). What is more, since "a contempt order is a 'potent weapon,' courts should be cautious in imposing this sanction if 'there is a fair ground of doubt as to the wrongfulness of the [party's] conduct.'" *Eros Entertainment, Inc. v. Melody Spot, L.L.C.*, No. 99 CV 1157 SJ., 2005 WL 4655385, at *4-5 (E.D.N.Y. Oct. 11, 2005).

A court should enter a civil contempt order "only where the moving party establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995). In the context of civil contempt, clear and convincing evidence means "a quantum of proof adequate to demonstrate a 'reasonable certainty' that a violation occurred." *Levin v. Tiber Holding Co.*, 277 F.3d 243, 250 (2d Cir. 2002).

A party cannot be held in civil contempt for failing to provide material sought in a subpoena if that party cannot be shown to have possession of the material. *See Gray v.*

*Giarrizzo,* 47 A.D.3d 765, 766, 850 N.Y.S.2d 549, 550 (2d Dept. 2008) ("A subpoenaed witness must be shown to be in possession of or have reasonable access to the information sought in order for the subpoenaed witness to be held in civil contempt."); *In re Welling*, 40 F. Fupp.2d 491, 493 (S.D.N.Y. 1999) (lacking possession of documents and not being in a position to comply with a subpoena may constitute a defense to a charge of contempt for non-production of documents).

### B. *Plaintiff Cannot Meet the Burden Required for Holding Mount Sinai in Contempt*

Plaintiff cannot meet the rigorous standard for holding non-party Mount Sinai in contempt. In response to Plaintiff's subpoenas, Mount Sinai conducted extensive searches to locate the hardware. Numerous employees searched in the locations where the hardware could have plausibly been placed, but despite these expansive searches, Mount Sinai has been unable locate the hardware. Mount Sinai communicated to Plaintiff's counsel that it was conducting extensive searches for the hardware and the results of these searches. Thus, Mount Sinai has diligently attempted to comply with the subpoenas in a reasonable manner. The Court should not hold it against Mount Sinai that the Hospital has continued searching for the hardware rather than simply telling Plaintiff the hardware could not be located after performing an initial search.

The hardware was likely discarded four weeks after Plaintiff's surgery, before Plaintiff sent Mount Sinai a Notice to Preserve Evidence. Plaintiff's Notice to Preserve Evidence in this matter is dated June 27, 2012, more than four weeks after Plaintiff's May 22, 2012 surgery (and many weeks after Plaintiff filed his May 7, 2012 Complaint in this matter). Mount Sinai cannot produce a specimen that it does not have, and it has been forthright with Plaintiff's counsel regarding the fact that the Hospital is not able to locate the hardware being subpoenaed. To the

extent Plaintiff's counsel seeks information Mount Sinai does not have concerning the whereabouts or tracking of the specimen at issue, the Hospital is unable to furnish such information because it simply does not exist. Mount Sinai has not disobeyed Plaintiff's subpoenas, but rather the Hospital has made repeated efforts to explain to Plaintiff's counsel why it cannot produce the hardware.

## CONCLUSION

For the foregoing reasons, non-party Mount Sinai should not be held in civil Contempt of Court.

Dated: New York, New York
       August 26, 2014

Respectfully submitted,

PROSKAUER ROSE LLP

By: Bettina B. Plevan
Rebecca L. Berkebile
Eleven Times Square
New York, New York 10036
Phone: 212-969-3000
Fax: 212-969-2900
E-mail: bplevan@proskauer.com
*Attorneys for The Mount Sinai Hospital*